## Fuson v. Helton, Sheriff, et al.

November 21, 1950.

R. L. Maddox, Judge.

Cleon K. Calvert, Robert J. Watson, for appellant.

Floyd Taylor for appellees.

JUDGE CAMMACK—Affirming.

A local option election was held in the White Church Precinct No. 51, in Bell County, in May, 1950. There were

93 dry votes cast and 53 wet votes. The appellant, Elmer Fuson, filed a petition contesting the election. He charged that no fair or legal election was held because of the disregard of the provisions of KRS 118.330 (1). This statute prohibits any person other than election officers and challengers from being closer to the polling place than 50 feet.

It was further charged in the petition:

"VI. From the time the polls opened in said precinct on said date, till they closed, large numbers of those favoring prohibition in said precinct congregated on the porch of the building in which the polls were being held, and immediately at and in front of the door leading into the polling room, and harassed and intimidated persons presenting themselves to vote; and among other things these are some of the things they would say and do:

"(a) They would tell the voter that if he or she voted 'Yes' when they got into the polls, the good people of said precinct would have no further association with them.

"(b) That if they voted 'Yes' and had any church affiliations they would be excommunicated from their church.

"(c) That if they voted 'Yes' they would be committing a grievous sin.

"(d) That no man or woman who was honest would vote 'Yes.'

"(c) That no man or woman, who would take a drink of liquor, was an honest man or woman. and many other things of like import.

"VII. That the doings and sayings related in the next preceding paragraph so intimidated, embarrassed and influenced many of the legally qualified voters of said precinct, that they failed to express their sentiments in said election, and some were disgusted, to the extent that they left the voting place without registering their answer to the question propounded to the voters on the ballot. All these things were done and said to the voters within less, and much less, than fifty feet of the voting room.

"VIII. By reason whereof there was no legal or valid election held in White Church Precinct No. 51, on May 13th, 1950."

A demurrer was sustained to the petition, and upon Fuson's declining to plead further his petition was dismissed. On the appeal it is contended that the election was void because the violations of the statute destroyed the secrecy of the ballot, and also that many voters were intimidated, embarrassed and harassed so as to prevent a full and fair expression of sentiment on the local option question.

In the case of Field v. Prewitt, 274 Ky. 306, 118 S. W. 2d 700, it was pointed out that the purpose of the statute in question was to preserve the secrecy of the ballot, and, if the secrecy of the election is not violated, an election will not be set aside because of a technical violation of the statute. It was pointed out further that facts should have been stated showing how and to what extent votes were affected by the alleged violation of the statute. The allegations of the petition were sufficient to show the manner in which the election was said to have been influenced in White Church Precinct, but no facts were alleged showing the extent of the alleged violation. Of course there was the charge that the result of the election was changed, but it was pointed out in the Field case that a general statement of this nature was insufficient. The names of no voters who failed to vote because of the alleged violations of the statute were given, nor was the number of such persons given. Since there was a difference of 40 votes in favor of the drys, it would have been necessary for the petition to have set forth that a number of voters sufficient to change the result of the election had been kept from the polls.

Under the circumstances, we think the judgment should be and it is affirmed.